UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

Bandits Outlaw Sprint Series, LLC,　　　|
　　　　　　　　　　　　　　　　　　　|
　　　　Plaintiff,　　　　　　　　　　|
　　　　　　　　　　　　　　　　　　　|　　　Case No. 2:24-CV-4186
v.　　　　　　　　　　　　　　　　　　|
　　　　　　　　　　　　　　　　　　　|　　　**JURY TRIAL DEMANDED**
POWRi Inc.　　　　　　　　　　　　　|
[Serve: Registered Agent - Kevin Greven　|
50 Twiggy Lane　　　　　　　　　　　|
Eldon, MO 65026]　　　　　　　　　　|
　　　　　　　　　　　　　　　　　　　|
　　　　Defendant.　　　　　　　　　　|
　　　　　　　　　　　　　　　　　　　|

## <u>COMPLAINT</u>

COMES NOW Plaintiff, by and through counsel, and for its Complaint against Defendant states as follows:

### NATURE OF SUIT

1. This action arises from a concerted and tortious effort by Defendant to divert assets and customers from Plaintiff for and to its benefit.

2. Plaintiff therefore bring this action for trademark infringement, false designation of origin, cybersquatting, copyright infringement, deceptive trade practices, and unfair competition against Defendant.

3. Despite Plaintiff's prior rights, Defendant has used Plaintiff's trademark and copyrighted images to offer services identical to Plaintiffs' services.

4. Defendant's infringing activities are likely to cause, and in fact have caused, confusion among the trade and consuming public as to the source or origin of the infringing services, thereby causing irreparable harm to Plaintiff.

Case 2:24-cv-04186-MDH   Document 1   Filed 10/15/24   Page 1 of 24

**PARTIES**

5. Plaintiff Bandits Outlaw Sprint Series, LLC ("BOSS LLC") was formed on or around April 6, 2023 as a Minnesota limited liability company. BOSS LLC is wholly owned by its sole member, William Eggimann ("Eggimann").

6. Defendant POWRi, Inc. ("POWRi") was formed on or around September 20, 2004 as an Illinois corporation. Defendant POWRi was formerly known as Gateway Racing, Inc. and currently has the assumed corporate name of Lake Ozark Speedway, Inc. registered with the Illinois Secretary of State. On or about March 18, 2021, Defendant POWRi registered as a Foreign For-Profit Corporation with the Missouri Secretary of State with its principal place of business located in Miller County, Missouri at 50 Twiggy Lane, Eldon, MO 65026.

**JURISDICTION AND VENUE**

7. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1338, and under its supplemental jurisdiction of 28 U.S.C. §1367, the Counts of which concern acts of unfair competition under the Lanham Act, 15 U.S.C. §§ 1120, 1125(a), 1125(d), copyright infringement under the Copyright Act, 17 U.S.C. §501, as well as trademark infringement and unfair competition under the laws of the State of Missouri, Iowa, and Oklahoma.

8. This Court has personal jurisdiction over Defendant because it has maintained sufficient minimum contacts with Missouri such that the exercise of personal jurisdiction over it would not offend traditional notions of fair play and substantial justice. In particular, (a) Defendant's principal place of business is in this District and the State of Missouri; (b) Defendant conducts business in this District and the State of Missouri and is otherwise

purposefully, systematically, and continuously engaged in substantial and not isolated activities in this District and the State of Missouri; and/or (c) the significant majority of the conduct complained of herein occurred in this District and the State of Missouri.

9. Venue is proper in this Court under 28 U.S.C. §1391 in that Defendant's principal place of business is located in this judicial district, Defendant is subject to the personal jurisdiction of this judicial district, and that a substantial part of the events giving rise to this action occurred in this judicial district.

10. Venue properly lies in this district pursuant to 28 U.S.C. §1400(a) because Defendant or its agent reside or may be found in this district.

11. The Court has supplemental jurisdiction over the claims arising under the laws of the State of Missouri, Iowa, and Oklahoma, pursuant to 28 U.S.C. §1367(a), because the state law claims are so related to the federal subject-matter claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.

## FACTUAL ALLEGATIONS

### The Timeline

12. In late 2015, Steve Lang ("Lang") and Darin Short ("Short") cofounded Sprint Car Bandits ("SCB") which they operated together during the 2016 and 2017 seasons.

13. In June of 2018, Lang transferred his interest in SCB to Short due to health issues.

14. Shortly after in July of 2018, Eggimann purchased SCB and all of its intellectual property from Short. Notably, per the bill of sale agreement and the agreement between the parties, Short would remain a contract employee of SCB after the purchase to handle things like the website, Facebook page, press releases, email blasts, and flyer creation (collectively referred to as "public relations"). See Attached Exhibit A.

15. For the next couple of years, Short remained a contract employee of Eggimann, who was then doing business as SCB, and handled the various public relations tasks on behalf of Eggimann/SCB.

16. In 2020, Eggimann/SCB was contemplating a new way to be competitive in the industry. In particular, SCB had a unique rule package that allowed certain engine and chassis combinations so that different sprint cars could be competitive within their respective classes.

17. Eggimann/SCB decided that for the 2021 season they would eliminate the specific rules regarding engine size – hence the term "OUTLAW". Eggimann/SCB felt that the new OUTLAW brand would help create additional value and excitement for the track and their marketing partners.

18. Eggimann/SCB hired Design Studio 66 to do the new logo design work which strategically kept SCB's Bandit Skull with Bandana design.

| Original Bandit Skull with Bandana Design ("SCB Design") Exhibit Q | New Bandit Skull with Bandana Design with BOSS ("BOSS Design") Exhibit R |
|---|---|
|  | |

19. Then in October of 2020, the transition from SCB to Bandits Outlaw Sprint Series ("BOSS") was publicly announced. See Exhibit B. It is important to note that during this entire time, Short was employed by Eggimann/SCB to assist in the process of rebranding from SCB to BOSS.

20. In December of 2020, Sprint Car & Midget Magazine published an article highlighting the series name transition from SCB to BOSS. Sprint Car & Midget Magazine is the world's leading short track open wheel racing magazine, featuring the best of sprint car, midget, silver crown, micro-sprint, and mini-sprint racing. See Exhibit C.

21. As of February 2021, Eggimann had already placed an order of BOSS promotional shirts. See Exhibit D.

22. On March 6, 2021, Eggimann updated the SCB Facebook page to reflect the new BOSS name. See Exhibit E.

23. Then in or around early September 2021, Eggimann was approached by Kenny Brown ("Brown") of POWRi with a bid to purchase the BOSS series. Brown/POWRi has a long-standing history of buying up smaller groups/brands, like Plaintiff, and consolidating them under the POWRi brand.

24. Eggimann and Brown discussed the buyout and Eggimann even proposed a potential partnership of BOSS with POWRi. See Exhibit F.

25. It was only after Eggimann rejected selling BOSS to Brown/POWRi did Eggimann discover the true intent of the parties.

26. Unbeknownst to Eggimann at the time, Short and Lang were collaborating with Brown/POWRi to secure the purchase of the BOSS series from him.

27. Upon information and belief, Brown/POWRi intended to purchase the BOSS series from Eggimann and have Lang and Short manage the day-to-day operations of the BOSS series under the POWRi umbrella.

28. Eggimann's rejection of the sale upset Brown, Lang, and Short and ultimately resulted in Eggimann terminating Short's services for BOSS (formerly SCB) on or around October 11, 2021. See Exhibit G.

29. Conveniently, shortly after, on October 19, 2021, Lang file an assumed name with the Texas Secretary of State for Bandits Outlaw Sprint Series. See Exhibit H.

30. Lang had no association or involvement with SCB, Eggimann, or BOSS during the preceding years and for him to register a DBA for BOSS within eight days of Eggiman's sale rejection exemplifies the conspiracy and egregiousness underlaying this matter.

31. Due to Short's public relations responsibilities for BOSS (formerly SCB), Eggimann had provided Short with access and control of numerous intellectual property assets of SCB/BOSS. Several of which he refused to turnover to Eggimann after being terminated.

32. On November 22, 2021, in an effort to recover his intellectual property, Eggimann emailed Short asking about the BOSS domains because as relayed above, Short was registering and maintaining the domains on behalf of Eggimann/SCB/BOSS during his employment. Short had in fact secured the domain www.banditsoutlawsprintseries.com on behalf of SCB/BOSS for the purpose of the rebrand but refused to release the website to Eggimann.

33. Short never turned over the domain to Eggimann and as such, Eggimann was forced to secure a new website which was launched shortly after. See Exhibit I.

34. On or around December 25, 2021, Eggimann announced this new website (www.bosssprintcarseries.com). See Exhibit J.

35. Then on December 28, 2021, Lang sent a cease and desist letter to Eggimann despite having knowledge of all the facts above. See Exhibit K.

36. Then on December 12, 2022, Lang and Brown executed a Sale Agreement by which Lang stated he was doing business as BanditsOutlawSprintSeries.com (the same domain Short had previously secured on behalf of Eggimann/SCB/BOSS), also known as BOSS, and agreed to convey to Brown/POWRi the business name and domain for the purchase price of $1,000.00. Exhibit L.

37. Brown/POWRi executed the Sale Agreement and paid Lang the purchase price. Exhibit M.

38. On December 28th, 2022, Lang withdrew the assumed name it previously filed with the Texas Secretary of State for Bandits Outlaw Sprint Series. Exhibit N.

39. If that wasn't enough, Brown/POWRi publicly announced that they acquired the BOSS series on January 18, 2023 using not only Eggimann's BOSS tradename but also the copyrighted images causing actual consumer confusion. See Exhibit O.

40. Brown/POWRi continued to publicly use the BOSS trademark and copyrights on multiple occasions via the internet and directly in the states of Missouri, Oklahoma, and Iowa. See Exhibit P.

41. To date, Brown/POWRi continue to publicly use the BOSS trademark on their Lake Ozark Speedway website www.lakeozarkspeedway.net. See Exhibit P.

42. Notably, as further evidence of the transition from SCB to BOSS and Plaintiff's ownership, the Bandit Skull with Bandana ("SCB Design") is the same illustration used for the logo for SCB which Plaintiff (by and through Eggimann) purchased rights to in 2018 and registered with the U.S. Copyright Office. See Exhibit Q - Copyright Registration # VA0002361403.

43. That same illustration was used in conjunction with the new name, BOSS, as part of the rebrand ("BOSS Design") which Plaintiff also registered with the U.S. Copyright Office. See Exhibit R - Copyright Registration # VA0002351947

44. That on or about April 6, 2023, Eggimann caused Plaintiff to be registered with the Minnesota Secretary of State.

45. That Eggimann transfers all of his, SCB, and BOSS' intellectual property, including all the goodwill and the claims at issue in this case, to Plaintiff.

46. Ever since the public announcement was made by POWRi, there has been actual consumer confusion.

47. It is clear from the evidence and the timeline that Plaintiff was in fact using the name BOSS, including the trademark and copyrights, and publicly announced a transition at least as early as October of 2020.

48. It wasn't until Eggimann politely passed on a deal with Defendant that the relationship went sour and Short, Lang, and Brown conspired on behalf of Defendant to harm Plaintiff.

49. It is also apparent from all the facts outlined above that even a superficial review of this matter demonstrates Defendant's deliberate and willful infringement of Plaintiff's intellectual property rights.

### Defendant's Conduct is Knowing, Intentional, and Willful and has Harmed and Continues to Harm Plaintiff

50. Plaintiff has been using the BOSS trademark since at least as early as October 16, 2020 and owns the trademark listed in the table below. A true and correct copy of the U.S. registration certificate for the BOSS trademark is attached hereto as Exhibit S.

Case 2:24-cv-04186-MDH   Document 1   Filed 10/15/24   Page 8 of 24

| Mark | Registration Number | Registration Date | Class & Goods/Services |
|---|---|---|---|
| BANDITS OUTLAW SPRINT SERIES | 7,336,269 | 03/26/2024 | Class 41: organizing, arranging, and conducting automobile races; entertainment services in the nature of conducting automobile and other vehicle races |

51. Plaintiff acquired the Bandits Skull with Bandana design ("SCB Design") in July of 2018 and has been using the SCB Design since. Plaintiff has also used the Bandits Skull with BOSS design ("BOSS Design") since at least as early as March of 2021 and has been using the BOSS Design since. Plaintiff owns the copyrights for both the SCB Design and the BOSS Design listed in the table below. A true and correct copy of the U.S. registration for the SCB Design and the BOSS Design is attached hereto as Exhibits Q&R.

| Work | Registration Number | Registration Date |
|---|---|---|
| Bandits Skull with Bandana | VA0002361403 | 05/06/2023 |
| Bandits Skull with BOSS | VA0002351947 | 05/06/2023 |

52. The constant attacks on Plaintiff since late 2021 have been done intentionally to harm Plaintiff financially and devalue the BOSS trademark and copyrighted designs.

53. All of the above was done with the distinct intent to harm Plaintiff and has, in fact, caused significant harm to Plaintiff.

54. Plaintiffs repeats and realleges the preceding paragraphs as if fully set forth herein.

55. Plaintiff owns the exclusive rights in and to the BOSS trademark, including the United States Trademark Registration for the mark. See Exhibit S.

56. At all relevant times, Plaintiff is and was the owner of all right, title, and interest to the BOSS trademark and those rights have not been assigned, or otherwise transferred, to Defendant.

57. Through Plaintiff's continuous and substantially exclusive use of the BOSS trademark in commerce since October of 2020, the relevant trade and consuming public has come to identify the BOSS trademark and the services offered under it as originating with Plaintiff.

58. Plaintiff has built a valuable business in its use of the BOSS trademark and the goodwill associated with Plaintiff is of high value both to Plaintiff and on an objective economic basis.

59. Without Plaintiff's authorization or consent, Defendant used the BOSS trademark in interstate commerce.

60. Despite Plaintiff's superior rights, Defendant adopted and used the BOSS trademark on its Website, at various racing events, and various social media accounts in interstate commerce for services that are identical, similar, and/or related to, and compete with those of Plaintiff.

61. Defendant's adoption and use of the BOSS trademark, has caused confusion, deception, and mistake by creating the false and misleading impression that Defendant's products

and/or services originate from, are associated with, or are sponsored, endorsed, or approved by Plaintiff.

62. Defendant had and has direct financial interests in, and directly benefitted from, its intentionally infringing activity.

63. Defendants used the BOSS trademark in an intentional effort to cause confusion, mistake, or to deceive consumers, Plaintiff's customers, and the general marketplace.

64. Defendant's adoption and use of the BOSS trademark was done with intentional, willful, and malicious intent to trade on the goodwill associated with the BOSS trademark and to harm Plaintiff.

65. Defendant's adoption and use of the BOSS trademark caused actual confusion among consumers, and deceived and misled consumers regarding the source, sponsorship, authenticity, and quality of products/services connected to the BOSS trademark.

66. Defendant's intent in using the BOSS trademark was to confuse, deceive, and mislead consumers.

67. Defendant's intent in using the BOSS trademark was also to harm Plaintiff.

68. Defendant has infringed on Plaintiff's rights by imitating and/or using without authorization the registered BOSS trademark.

69. Defendant's unlawful conduct was deliberate, intentional, knowing, willful, and malicious.

70. As a direct and proximate result of Defendant's infringement, Plaintiff suffered significant damages, including damage to the goodwill and reputation of the BOSS trademark, as well as ascertainable damages in an amount to be determined at trial.

71. Defendant's conduct constitutes trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. §1114.

72. Defendant's adoption and use of the BOSS trademark caused irreparable injury to Plaintiff's goodwill and reputation as developed and symbolized by the BOSS trademark.

73. Defendant's adoption and use of the BOSS trademark caused a likelihood of confusion and deception among consumers.

74. Pursuant to Section 34 of the Lanham Act, 15 U.S.C. §1116, Plaintiff is entitled to preliminary and permanent injunctive relief to prevent damage to Plaintiff and to prohibit Defendant from further violations of Section 32 of the Lanham Act, 15 U.S.C. §1114.

75. Pursuant to 15 U.S.C. §1117(a), Plaintiff should be awarded its actual damages, costs, and Defendant's profits derived from its infringing activities.

76. Because Defendant's acts of infringement have been and continue to be knowing, willful, and intentional, this is an exceptional case under Section 35 of the Lanham Act, 15 U.S.C. §1117(a) entitling Plaintiff to recover its attorneys' fees and up to three times its actual damages.

77. Pursuant to Section 36 of the Lanham Act, 15 U.S.C. §1118, Plaintiff is entitled to an order requiring Defendant to deliver up to Plaintiff the www.banditsoutlawsprintseries.com domain. Plaintiff further seeks a destruction order requiring that Defendants deliver up and destroy all goods, merchandise, products, labels, signs, prints, packaging, advertising materials, letterhead, business cards, and other materials bearing the BOSS trademark, and any other marks that are confusingly similar to the registered BOSS trademark.

WHEREFORE, for the foregoing reasons, Plaintiff pray this Court enter its order (1) granting preliminary and permanent injunctive relief, (2) awarding Plaintiff the Defendant's profits, damages sustained by Plaintiff, and the costs of this action, (3) finding this is an exceptional case and awarding Plaintiff's attorneys' fees and three times its actual damages, and (4) requiring Defendant to deliver up the infringing domain name and to destroy all other materials bearing the BOSS trademark or any other confusingly similar marks.

## COUNT II
### False Designation of Origin
### (Lanham Act Section 43(a), 15 U.S.C. §1125(a))

78. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

79. Defendant's conduct as described herein constitutes use of a false designation of origin and/or a false or misleading description or representation of fact on or in connection with their services which is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of the parties, and/or as to the origin, sponsorship, or approval of their respective goods and services, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

80. Defendant's use in commerce of designations which are identical and/or confusingly similar to the BOSS trademark, despite having actual and constructive notice of Plaintiff's rights in and to the BOSS trademark, constitutes intentional conduct by Defendant to make false designations of origin and false descriptions about its goods, services, and commercial activities.

81. By Defendant's conversion, adoption, and use of Plaintiff's www.banditsoutlawsprintseries.com domain name, Defendant has affixed, applied,

annexed, and/or used false designations of origin and/or false or misleading representations of fact in connection with the advertisement and promotion of Defendant's services in interstate commerce.

82. Defendant's aforementioned conduct has and is likely to continue to cause confusion, mistake, and deception as to the origin of Defendant's services and/or Plaintiff's services, and/or has and is likely to continue to cause confusion, mistake, and deception as to whether there is an association, affiliation, connection, sponsorship, or endorsement of Defendant and Defendant's services by or with Plaintiff and Plaintiff's services.

83. Defendant's conduct constitutes false designation of origin, false affiliation, false association, false endorsement, and/or false sponsorship in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

84. Defendant's conduct has been and continues to be knowing, willful, and intentional.

85. Defendant's unlawful conduct has caused, and will continue to cause, irreparable harm to Plaintiff. Unless Defendant is enjoined from continuing the aforementioned unlawful acts, Plaintiff will suffer irreparable harm.

86. Pursuant to Section 34 of the Lanham Act, 15 U.S.C. §1116, Plaintiff is entitled to preliminary and permanent injunctive relief to prevent damage to Plaintiff and to prohibit Defendant from further violations of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

87. Pursuant to 15 U.S.C. §1117(a), Plaintiff should be awarded its actual damages, costs, and Defendant's profits derived from its infringing activities.

88. Because Defendant's acts of infringement have been and continue to be knowing, willful, and intentional, this is an exceptional case under Section 35 of the Lanham Act, 15 U.S.C.

§1117(a) entitling Plaintiff to recover its attorneys' fees and up to three times its actual damages.

89. Pursuant to Section 36 of the Lanham Act, 15 U.S.C. §1118, Plaintiff is entitled to an order requiring Defendants to deliver up the www.banditsoutlawsprintseries.com domain and a destruction order requiring that Defendant deliver up and, at Plaintiff's preference, destroy all goods, merchandise, products, labels, signs, prints, packaging, advertising materials, letterhead, business cards, and other materials bearing the BOSS trademark or any other marks confusingly similar to the registered BOSS trademark.

WHEREFORE, for the foregoing reasons, Plaintiff pray this Court enter its order (1) granting preliminary and permanent injunctive relief, (2) awarding Plaintiff the Defendants' profits, damages sustained by Plaintiff, and the costs of this action, (3) finding this is an exceptional case and awarding Plaintiff's attorneys' fees and three times its actual damages, and (4) requiring Defendant to deliver up the infringing domain name and to destroy all other materials bearing the BOSS trademark or any other confusingly similar marks.

## COUNT III
### Cybersquatting
### (Lanham Act Section 43(d), 15 U.S.C. §1125(d))

90. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

91. The BOSS trademark was a valid and distinctive trademark of Plaintiff before Defendant acquired and began using the www.banditsoutlawsprintseries.com domain name.

92. The www.banditsoutlawsprintseries.com domain name acquired and used by Defendant is confusingly similar to the BOSS trademark.

93. The www.banditsoutlawsprintseries.com is identical to the BOSS trademark and was misappropriated by Defendant from Plaintiff.

Case 2:24-cv-04186-MDH   Document 1   Filed 10/15/24   Page 15 of 24

94. Defendant had actual or constructive knowledge of Plaintiff and the BOSS trademark prior to acquiring and using the www.banditsoutlawsprintseries.com domain name.

95. Defendant has registered and/or hold the www.banditsoutlawsprintseries.com domain in bad faith to profit from the Plaintiff's name and the BOSS trademark.

96. Defendant has no legitimate trademark or other intellectual property rights in the www.banditsoutlawsprintseries.com domain name, Defendant's legal name is not "Bandits Outlaw Sprint Series" nor are is it commonly known by such name, and Defendant is not making a bona fide noncommercial or fair use of the BOSS trademark. Instead, Defendant is using the www.banditsoutlawsprintseries.com domain name to divert consumers and internet traffic from Plaintiff to Defendant and for Defendant's commercial gain. Further, after misappropriating the www.banditsoutlawsprintseries.com domain name, Defendant registered and used the www.banditsoutlawsprintseries.com domain name while cloaking its true identity in the domain name registration records.

97. Defendant's registration and/or use of the www.banditsoutlawsprintseries.com domain name as described above constitutes cybersquatting in violation of Section 43(d) of the Lanham Act, 15 U.S.C. §1125(d).

98. Defendant's cybersquatting has been and continues to be knowing, willful, and intentional.

99. Defendant's cybersquatting has caused and will continue to cause irreparable harm to Plaintiff. Unless Defendants are enjoined from continuing the aforementioned unlawful acts, Plaintiff will suffer irreparable harm.

100. Pursuant to Section 34 of the Lanham Act, 15 U.S.C. §1116, Plaintiff is entitled to preliminary and permanent injunctive relief to prevent damage to Plaintiff and to prohibit

Defendants from further violations of Section 43(d) of the Lanham Act, 15 U.S.C. §1125(d).

101. Pursuant to 15 U.S.C. §1117(a), Plaintiff should be awarded its actual damages, costs, and Defendant's profits derived from its infringing activities. As an alternative to actual damages and Defendant's profits, and at Plaintiff's election any time before final judgment, Plaintiff is entitled to statutory damages between one thousand dollars and one hundred thousand dollars ($1,000.00 - $100,000.00) per each domain name found to be in violation of Section 43(d) pursuant to Section 35 of the Lanham Act, 15 U.S.C. §1117(d).

102. Because Defendant's acts of infringement have been and continue to be knowing, willful, and intentional, this is an exceptional case under Section 35 of the Lanham Act, 15 U.S.C. §1117(a) entitling Plaintiff to recover its attorneys' fees and up to three times its actual damages.

103. Pursuant to Section 43(d) of the Lanham Act, 15 U.S.C. §1125(d)(1)(C), Plaintiff is entitled to an order requiring Defendants to transfer to Plaintiff the www.banditsoutlawsprintseries.com domain name and any other domain name(s) incorporating "BOSS" or otherwise confusingly similar terms.

WHEREFORE, for the foregoing reasons, Plaintiff pray this Court enter its order (1) granting preliminary and permanent injunctive relief, (2) awarding Plaintiff the Defendant's profits, damages sustained by Plaintiff, and the costs of this action, or, as an alternative and at Plaintiff's election, statutory damages of $100,000.00, (3) finding this is an exceptional case and awarding Plaintiff's attorneys' fees and three times its actual damages, and (4) requiring Defendant to deliver up the infringing domain names.

Case 2:24-cv-04186-MDH   Document 1   Filed 10/15/24   Page 17 of 24

## COUNT IV
## Copyright Infringement

104. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

105. The SCB Design and the BOSS Design (the "Works") are original works of authorship, embodying copyrightable subject matter, that are subject to the full protection of the United States copyright laws (17 U.S.C. §101 *et seq.*).

106. Plaintiff owns a valid copyrights in the Works, having registered the Works with the Register of Copyrights and owning sufficient rights, title, and interest to such copyrights to afford Plaintiff standing to bring this lawsuit and assert these claims herein.

107. As a result of Plaintiff's reproduction, distribution, and public display of the Work, along with Defendant's relationship with Short and Lang, Defendant had access to the Works prior to its own reproduction, distribution, and public display of the Works on Defendant's website and in Defendant's advertisements.

108. Defendant reproduced, distributed, and publicly displayed the Works without authorization from Plaintiff.

109. By its actions, Defendant directly infringed and violated Plaintiff's exclusive rights in violation of the Copyright Act, 17 U.S.C. §501, by reproducing, distributing, and publicly displaying the Works for its own commercial purposes.

110. Plaintiff has been damaged as a direct and proximate result of Defendant's infringement.

111. Plaintiff is entitled to recover its actual damages resulting from Defendant's unauthorized use of the Works and, at Plaintiff's election pursuant to 17 U.S.C. §504(b), recovery of damages based on disgorgement of Defendant's profits from infringement of the Works which amounts shall be proven at trial.

Case 2:24-cv-04186-MDH   Document 1   Filed 10/15/24   Page 18 of 24

112. Pursuant to 17 U.S.C. §505, Plaintiff is further entitled to recover its costs as a result of Defendant's conduct.

113. Defendant's conduct has caused, and any continued infringing conduct will continue to cause, irreparable injury to Plaintiff unless enjoined by the Court. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. §502, Plaintiff is entitled to a permanent injunction prohibiting infringement of Plaintiff's exclusive rights under copyright law.

WHEREFORE, for the foregoing reasons, Plaintiff prays this Court enter its order (1) finding Defendant has infringed Plaintiff's copyrights in the Works; (2) awarding Plaintiff actual damages and disgorgement of profits, as well as its costs and attorneys' fees, and (3) permanently enjoining Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, assigns, and all those in active concert and participation with Defendant from directly or indirectly infringing Plaintiff's copyrights or continuing to display, transfer, advertise, reproduce, or otherwise market any works derived or copied from the Works or to participate or assist in any such activity, and (4) for such relief as the Court deems just and proper.

## COUNT V
**Common Law Trademark Infringement & Unfair Competition under Missouri Law**

114. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

115. Missouri's Mo.Rev.Stat. §417.005-417.066 prohibit any attempt to encroach upon the business of another by the use of similar trademarks or names with the intention of deceiving and misleading the public.

116. Through the continuous and exclusive use of the BOSS trademark in commerce, the relevant trade and consuming public have come to understand the BOSS trademark as

Case 2:24-cv-04186-MDH   Document 1   Filed 10/15/24   Page 19 of 24

identifying Plaintiff and indicating the source of origin of automobile and other vehicle races as coming from Plaintiff.

117. Plaintiff has built a valuable business in its use of the BOSS trademark and the goodwill associated with the BOSS trademark is of great value to Plaintiff. The BOSS trademark has come to indicate to the trade and the consuming public that the products and services bearing the BOSS trademark originate from Plaintiff.

118. Defendant has used designations that are confusingly similar and/or identical to Plaintiff's the BOSS trademark in interstate commerce, including the State of Missouri, in connection with products and services identical to those offered by Plaintiff under the BOSS trademark.

119. Defendant's unauthorized use of the BOSS trademark has caused, and is likely to continue to cause, confusion in the marketplace between the parties' respective services.

120. Defendant's infringement of Plaintiff's BOSS trademark is in willful and wanton disregard of Plaintiff's rights in and to the same, and without the consent of Plaintiff.

121. Defendant's wrongful actions have caused, and will continue to cause, Plaintiff to suffer significant damages, including lost business opportunities, lost profits, and damage to its reputation and goodwill.

122. As a result of the foregoing, Plaintiff has been damaged, in an amount to be proven at trial, but exceeding $75,000.

123. Defendant's wrongful, tortious conduct was willful, wanton, reckless, or entirely indifferent to the consequences of actions on the rights of Plaintiff warranting an award of exemplary and punitive damages under Missouri law.

WHEREFORE, for the foregoing reasons, Plaintiff prays this Court enter its order (1) finding Defendant's infringed Plaintiff's BOSS trademark, (2) awarding Plaintiff its damages sustained or all profits derived from Defendant's infringement, as well as its costs and attorneys' fees, (3) granting preliminary and permanent injunctive relief, and (4) finding Defendant's wrongful, tortious conduct was willful, wanton, reckless, or entirely indifferent to the consequences of actions on the rights of Plaintiff warranting an award of exemplary and punitive damages.

**COUNT VI**
**Common Law Trademark Infringement/Unfair Competition under Oklahoma Law**

124. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

125. The Oklahoma Deceptive Trade Practices Act, Okla.Stat. §78-51-78-54, prohibits any attempt to encroach upon the business of another by the use of similar trademarks or names with the intention of deceiving and misleading the public.

126. Through the continuous and exclusive use of the BOSS trademark in commerce, the relevant trade and consuming public have come to understand the BOSS trademark as identifying Plaintiff and indicating the source of origin of automobile and other vehicle races as coming from Plaintiff.

127. Plaintiff has built a valuable business in its use of the BOSS trademark and the goodwill associated with the BOSS trademark is of great value to Plaintiff. The BOSS trademark has come to indicate to the trade and the consuming public that the products and services bearing the BOSS trademark originate from Plaintiff.

128. Defendant has used designations that are confusingly similar and/or identical to Plaintiff's the BOSS trademark in interstate commerce, including the State of Oklahoma,

in connection with products and services identical to those offered by Plaintiff under the BOSS trademark.

129. Defendant's unauthorized use of the BOSS trademark has caused, and is likely to continue to cause, confusion in the marketplace between the parties' respective services.

130. Defendant's infringement of Plaintiff's BOSS trademark is in willful and wanton disregard of Plaintiff's rights in and to the same, and without the consent of Plaintiff.

131. Defendant's wrongful actions have caused, and will continue to cause, Plaintiff to suffer significant damages, including lost business opportunities, lost profits, and damage to its reputation and goodwill.

132. As a result of the foregoing, Plaintiff has been damaged, in an amount to be proven at trial, but exceeding $75,000.

WHEREFORE, for the foregoing reasons, Plaintiff prays this Court enter its order (1) finding Defendant's infringed Plaintiff's BOSS trademark, (2) awarding Plaintiff its damages sustained or all profits derived from Defendant's infringement, as well as its costs and attorneys' fees, and (3) granting preliminary and permanent injunctive relief.

### <u>COUNT VII</u>
**Common Law Trademark Infringement/Unfair Competition Under Iowa Law**

133. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

134. Iowa Code §548.112-548.117 prohibit any attempt to encroach upon the business of another by the use of similar trademarks or names with the intention of deceiving and misleading the public.

135. Through the continuous and exclusive use of the BOSS trademark in commerce, the relevant trade and consuming public have come to understand the BOSS trademark as

Case 2:24-cv-04186-MDH   Document 1   Filed 10/15/24   Page 22 of 24

identifying Plaintiff and indicating the source of origin of automobile and other vehicle races as coming from Plaintiff.

136. Plaintiff has built a valuable business in its use of the BOSS trademark and the goodwill associated with the BOSS trademark is of great value to Plaintiff. The BOSS trademark has come to indicate to the trade and the consuming public that the products and services bearing the BOSS trademark originate from Plaintiff.

137. Defendant has used designations that are confusingly similar and/or identical to Plaintiff's the BOSS trademark in interstate commerce, including the State of Iowa, in connection with products and services identical to those offered by Plaintiff under the BOSS trademark.

138. Defendant's unauthorized use of the BOSS trademark has caused, and is likely to continue to cause, confusion in the marketplace between the parties' respective services.

139. Defendant's infringement of Plaintiff's BOSS trademark is in willful and wanton disregard of Plaintiff's rights in and to the same, and without the consent of Plaintiff.

140. Defendant's wrongful actions have caused, and will continue to cause, Plaintiff to suffer significant damages, including lost business opportunities, lost profits, and damage to its reputation and goodwill.

141. As a result of the foregoing, Plaintiff has been damaged, in an amount to be proven at trial, but exceeding $75,000.

142. Defendant's wrongful, tortious conduct was willful, wanton, reckless, or entirely indifferent to the consequences of actions on the rights of Plaintiff warranting an award of exemplary and punitive damages under Iowa law.

WHEREFORE, for the foregoing reasons, Plaintiff prays this Court enter its order (1) finding Defendant's infringed Plaintiff's BOSS trademark, (2) awarding Plaintiff its damages sustained or all profits derived from Defendant's infringement, as well as its costs and attorneys' fees, (3) granting preliminary and permanent injunctive relief, and (4) finding Defendant's wrongful, tortious conduct was willful, wanton, reckless, or entirely indifferent to the consequences of actions on the rights of Plaintiff warranting an award of exemplary and punitive damages.

## JURY DEMAND

Plaintiff hereby requests a trial by jury as to all issues so triable.

Dated: October 15th, 2024   Respectfully submitted,

FortmanSpann, LLC

By:  ____/s/ Kelly M. Spann_____
Kelly M. Spann
Missouri Bar No. 73954
Attorney for Plaintiff
250 Saint Catherine Street
Florissant, MO 63031
(314) 522-2312
(314) 524-1519 (Facsimile)
kms@fortmanlaw.com

and

Miles Ringsred, Pro Hac Forthcoming
Attorney ID No. 0399640
370 Wanasha Street North
St. Paul, MN 55102
(218) 340-3600
mringsred@trautlaw.com